The final case on our call this morning is agenda number 11, number 130207. People of the State of Illinois v. Jeterius Yankaway. Counsel for the appellant, are you prepared to proceed? Good morning, your honors, good morning opposing counsel, and may it please the court. My name is Anthony J. Santella and I represent Jeterius Yankaway in this case. As a preliminary matter, I intend to argue the first two issues in order. However, because the State has agreed that error occurred on issue 3, if this court reaches issue 3, we would simply ask this court to find free Yankaway under either our argument or the State's. But to return to the first issue, which is ineffective assistance of counsel. Counsel, stop you right here. Yes. I'm confused. Sure. About what the issue is. And this is just kind of basic. We've got to write an opinion. The first paragraph is that the issue is. Okay. So I'm confused what the issue is and I'm going to ask you to help me. We know the big ideas in this case. We know this is all about speedy trial rights. In this case, defense counsel filed a motion to dismiss the complaint, the charge, based on a violation of the speedy trial principles. And there was a hearing. And the trial, the argument was that when you look at all of the history of the case, that the February 24th continuance should not have been, should not have told the term for running. That was the argument that was made. The trial court heard the motion and denied the motion to dismiss. And then later, after conviction, the defendant filed also a motion to reconsider, or a post-trial motion, again raising the same issues, that the speedy trial rights of the defendant had been violated, and specifically that the February 24th continuance should not have told the running of the term. And the trial court once again denied that. Are you asking us to review the trial court's decision? The answer to Your Honor's question about the issue is that I think the determinative issue here is whether Mr. Yankaway was prejudiced by counsel's deficient performance. And as part of that— So do you agree that the trial court was correct in denying the motion to dismiss, in denying the motion for a new trial? I think that the trial court was incorrect. And I think that as part of the determinative issue I described, this Court would need to find that the February 24th hearing was incorrectly attributed to both parties. There are a lot of ideas. Different standards of review, right? If we are reviewing the trial court's decision on the motion to dismiss and the motion for the new trial, we have one standard of review. If you don't want us to review that, you're conceding somehow that the trial court was correct when the trial court made those decisions. You're saying that ineffective assistance applies instead. It's something else. Beyond what counsel brought to the attention of the court in those hearings, something else that counsel should have done would, and because counsel didn't do that, it would prejudice the result in this case. Those are two big different ideas. And I'm kind of going to push you. Which one are you arguing? Your Honor, I don't concede that the trial GIF was correct in denying the motion to dismiss or the post-trial motion. The basis of our argument is that there was ineffective assistance of counsel. And like I said, I think that— So was it ineffective assistance during the motion to dismiss or in the post-trial motion? The ineffective assistance relates to the failure to correctly demand a speedy trial. And I think that goes along with the hearing on February 24th, which was the subject of the pretrial motion to dismiss and the post-trial motion as to whether Judge Lyons correctly attributed the continuance to both parties. So all the issues that you raise at mental—I have a hard time with what the issues are. That's why I read it. So all the issues about February 24th and the running of the term and how many days and all of that kind of thing, all that was before the trial court.   So how is it—how is it ineffective when defense counsel brought all of these issues to the attention of the court and the court rejected them? Well, I—the way that I see this case, Your Honor, and maybe we're having some disagreement, is I think that in order to establish ineffective assistance based on a speedy trial claim, the speedy trial violation has to be established first. From my understanding and the way that we structured the argument, that means that the speedy trial violation is established, and I think that would be under the specific standard of review that is established for claims of speedy trial violation. That should occur before any stricter analysis takes place. So— So when the trial court made a decision in this case, our big argument was had. February 24th. Should that toll the statute or not? And the trial court said, hearing everything, having lived through this whole case, I'm rejecting your argument that the February 24th toll the statute—or it didn't toll the statute. It did toll the statute because for the entirety of this case, defense counsel has said he's not ready because he doesn't have access to his client to talk with his client to prepare for trial. When the trial court said that, we're not supposed to look at that? There's a few points in response here, Your Honor. And I think the first is that the trial court's statements about defense counsel's preparedness I don't think are correct. And so we are asking this court to look at those statements in the context of the February 24th hearing. The February 24th hearing was not a continuance based on defense counsel's preparedness. And the issue of defense counsel's preparedness is smoke and mirrors in this case. But specifically to February 24th, the defense has put forward two theories here related to Mr. Yankoway's claim. The first is that the trial court abused his discretion. If this court does not find it abused his discretion— So you are saying that we have to address the issue of the trial court abusing his discretion? In the context of establishing a speedy trial violation, I think that that does need to be established. But we also raised the alternative claim on February 24th that there was deficient performance where defense counsel did not demand a speedy trial on the record through a written or oral motion. There are two parts to that. Consistently in the appellate court proceedings and before this court, we've said not just related to February 24th, but also to the August 19th, October 1st continuance, that part of the issue in this case is that defense counsel not only failed to demand trial under the interstate detainer statute, not to jump ahead, but also that defense counsel did not affirmatively demand a trial. I cited this in the briefs commonly under Hartfield, but this is a rule that's been—that predates Hartfield, that the defense attorney to—when the defense attorney is aware that delay is occurring, the defense attorney must make a demand, a speedy trial demand written or oral on the record. So the defense's position is that we've submitted a vote for this court.  Pardon your honor? But the defense attorney is not ready for trial on that day. Is it ineffective for counsel to not demand trial when counsel understands he's not ready for trial? I think in the context of this case, like I said, the issue of defense counsel's preparedness is raised a lot on appeal, but not more out from the record. If there's something in the record for a case where the defense counsel is pursuing a trial strategy or saying, I need this time, then I think that might come into play, and I think it would come into play, but that's not the case. Isn't that the basis of the trial court's ruling? I think the trial court was incorrect, your honor. When the trial court ruled that the motion to dismiss the indictment pre-trial was based on, well, defense counsel kept hobbling the case along, to use the language of Judge Lyons, and wasn't prepared for the trial, I don't think that's correct. I think a review of the record, when you're looking at the transcript, show that's not the basis for any continuance. Defense counsel never asked for a continuance because he needed to prepare with Mr. Yankaway. There was a longstanding agreement that was set up very early in his proceedings that because Mr. Yankaway was in the Department of Corrections, he would be written back at the final pre-trial status date and stay in Peoria County before the trial. There was one trial date where this didn't happen, and from that point on, the trial court said, well, this is an issue that the defense counsel is just not preparing. That's not an indication from the record that that actually was a problem. Defense counsel specifically told the court, just written back here, defense counsel felt that was sufficient for his preparation. And the court said, I can't hold this man in the county jail. He's in the Department of Corrections. I can't hold him for defense counsel's convenience. So defense counsel can finally have an opportunity to speak with his client and prepare for trial. Certainly, defense counsel asked for that over and over again. I have not been able to drive three hours to Pickneyville and visit with my client and prepare for trial. I'm asking you to bring and house him in the Peoria County jail. Right? That's what he asked him. And the court said, I can't do that. You say you can't prepare for trial because he's in DOC. You're asking me to make special conditions. I can't do that. I actually disagree with that, Your Honor. What the trial judge said is that he would be unwilling to keep Mr. Yankaway when the continuances occurred. The trial judge was very open and willing to, like I said, on average, it was about 11 days before the trial. Mr. Yankaway was written back. Peoria County was able to have him stay there for the pendency between the final pretrial status and the trial date. The problem here is the trial date kept getting pushed. What the trial judge said is that he wasn't willing to let, just for example, Mr. Yankaway stay in Peoria County from February 28th to July 11th or from July 11th to September 19th. It's incorrect to say that Peoria County couldn't house Mr. Yankaway for the period of time he was written back. He was written back numerous times. The problem is that the trial kept getting pushed. And that was not at the fault of Mr. Yankaway or defense counsel. And it wasn't the case that defense counsel was having this issue because it was a preparation issue. If the court looks at the record, defense counsel pursued the same strategy throughout the entirety of these proceedings. If you look at the preliminary hearing, and there was a lengthy preliminary hearing in this case, the defense put on essentially an alibi defense. It called witnesses. The same defense was presented at the trial. The same alibi defense, the same locations where Mr. Yankaway was. The difference was just that Mr. Yankaway was the one that testified to that defense at the trial. So it can't be said from a review of this record that here defense counsel was hobbling the case along, to use the language of the court. Did Mr. Yank, I'm sorry, Mr. Yankaway, file a motion to discharge his lawyer because the lawyer had not come to see him? That was a subject of a motion that's not in the record on November 4th. So we don't have that. It was never filed. I'm not sure if that was just a, well, we're not going to take care of this at this time, or not file it at this time because it's taken care of. There's also a reference to a motion to withdraw that's not in the record. And Yankaway made some allegations about, oh, well, he hasn't come to see me. However, at that point when the court denied the motion, this isn't really an issue again. The one time that Mr. Yankaway brings up ineffective assistance is in the context of the continuance ordered on February 24th, which he said that was not a continuance I wanted. I was not expecting that continuance. I told my attorney I wanted a speedy trial. I don't think that that November 4th motion really comes into play here. Mr. Yankaway isn't making a complaint again that, well, he's not having the time to see me. Defense counsel pursues the same trial strategy. And whether or not that trial strategy involved him going to Pickneyville to help prepare, defense counsel did not seem to think that that was something that was necessary. It's not part of his preparation to talk to his client. That's not what I mean, Your Honor. I mean that the preparation, the dotting the i's, the crossings the t's, could take place when Mr. Yankaway was written back to Peoria County, which the trial judge was willing to do. And that was never a problem. The trial judge said, yeah, we can bring him back because we have trial coming up. The issue here is that the trial kept getting pushed. And that was at no fault of Mr. Yankaway or of defense counsel. The dates at issue here established a speedy trial violation specifically as to February 24th because, based on the record, Judge Lyons is giving his reasons for continuing the date from February 28th. Part of the reason is that the complaining witness was unavailable. Importantly, that's not clear from the record. And Judge Lyons continued the trial based on incomplete information as to the whereabouts of the complaining witness. In fact, the court said the complaining witness was or is in the Department of Corrections. Nobody knows if the complaining witness was released from the Department of Corrections at that point on parole and could have attended trial. Therefore, the continuance on February 24th to move the trial 134 days to July 11th should not have been attributed to both parties, should not have been attributed to Mr. Yankaway. And when Mr. Yankaway learned of this continuance, that is when he did file a second pro se pleading saying that I want a trial right away. I'm alleging ineffective assistance. Defense counsel and Yankaway apparently worked that out because defense counsel continued to represent Mr. Yankaway. So there was discussions between the two of them. There are phone calls referenced. And in addition, the speedy trial violation can be established because defense counsel did not affirmatively demand a trial pursuant to, you know, Hartfield and the requirement. I'm sorry. That's in terms of the sufficiency of what happened in February 24th. Could you take a minute and talk about the two statutes? You also think you're arguing that the defense counsel was ineffective because he didn't understand the statutes. Yes, Your Honor. By its plain terms, the interstate detainer statute applies to people that are incarcerated in the Department of Corrections. And this court has said and courts have relied on the fact that as a precondition to starting the speedy trial term, the 160-day clock, a compliant demand has to be filed. Here there is authority from the Fourth District saying that does support finding of deficient performance. The ultimate issue is defense counsel knew that Mr. Yankaway was in the Department of Corrections. On October 5th, 2020, he was the one who told the court, let's send Mr. Yankaway to the Department of Corrections now while this current case is pending. So he knew where he was and he knew that Mr. Yankaway wanted a speedy trial. But he did not file a compliant demand under the interstate detainer statute. Why does that make a difference when the trial court believed the term was running and it was 160 days? Well, it makes a difference certainly because defense counsel, as the representative of Mr. Yankaway, needs to be able to correctly assert Mr. Yankaway's rights. I mean, even if a case were to end up on appeal, then you're not able to even validly make a perfectly preserved claim. The trial court was giving expansive rights to the defendant. You say defense counsel didn't file the demand and so therefore the term didn't start running and that's why it was ineffective. Here the trial court believed the term was running. And when counsel said it's 120 days, the trial court said, no, it's 160 days. He was giving more rights to the defendant than what the defense counsel was arguing. How could you say – I mean, I don't understand. I don't understand your argument. Your Honor, the argument I put in the briefs and I'll say here is that basically the trial court was wrong and did not understand the speedy trial statute. There were instances in the record, for example, on June 30th where the prosecutor told the court, well, it's a 120-day term. The trial judge at the pre-trial motion is dismissed. Then here's its 160-day term. And then he says, oh, it's a 160-day term. But even on the June 30th date, for example, the trial judge says, well, if I set this trial in September, it will be beyond 120 days. And you're telling me it's a 120-day term and I don't have time to do this in July or August. I'm going to set it in September. So the issue here – or one of the issues here certainly is that we can't really rely on the trial court statements as to verify that the motion dismissing indictment was correctly decided. And going back to the question of how the interstate detainer statute applies, it's still incumbent on the defense attorney. The speedy trial statutes and speedy trial precedents still require the defense attorney to correctly demand a speedy trial. I don't think it's sufficient to say, and I don't think courts would accept, especially reviewing courts, that, well, the trial judge got the law slightly wrong, but just because you didn't file – the trial judge didn't understand that it was supposed to be interstate detainer statute either, so you went on a speedy trial. It's incumbent on the defense attorney to correctly demand a trial. And that did not happen here, and it was deficient performance. This court should find the same. I do believe that prejudice is being – is able to be shown in this case as well because the speedy trial violation must be established first. We submit there was a speedy trial violation, and that does show actual prejudice. I think obviously it can't be the case that every single time an ineffective assistance of counsel claim is based on a speedy trial violation. The state can simply say, well, we would just have to trial sooner. I also don't think it's the case that a defendant always wins by establishing a speedy trial violation in an ineffective assistance claim just because the violation is established. It's somewhere in the middle, and here we look at the circumstances. Like I said, the prosecutor let a potential speedy trial violation occur on June 30th, 2022. This is strong evidence of how the prosecutor would have acted if the – if defense counsel had not performed efficiently. You also have the fact that the state was the party looking for continuances here or the trial court ordered the continuances. There's not a continuance in this case that was ordered by the defense or by defense counsel. Prejudice in this case, you know, 89 days past 160-day term shows that prejudice did occur. We would ask this court to find the same. Thank you. Your Honor, I have other questions right now. Counsel, good afternoon. Thank you, Your Honors and counsel. May it please the court. Assistant Attorney General Matt Skiba on behalf of the people. I'd like to start first with the speedy trial issues before turning to the defendant's sentencing claim. And defendant cannot show either deficient performance nor prejudice because his underlying speedy trial claim is meritless. And to explain why, I'd like to start with the Chief Justice's framing in this case, and that's on prejudice. We don't concede that any speedy trial demands needed to be filed, quite the opposite. Do you think the issue of the correctness of the trial court's decision on the speedy trial issue is before this court? It's only before this court on the prejudice inquiry, Your Honor. And that is, if counsel was deficient in not filing a speedy trial demand, what would have happened? And we know that in this case, a speedy trial demand wouldn't have made a difference. Because as Your Honor noted, the trial court assumed that the speedy trial clock of 160 days had been running and correctly denied the motion to dismiss because after finding that defendant was tried well within 160 days. And as the Chief Justice noted, really this case could begin and end with this February 2022 continuance that the trial court found was attributable to the defendant. And no matter which way this court looks at that decision, it was not abuse of discretion to so find. It's also important to note that we review this for an abuse of discretion because the trial court is in the best position to make that determination, given its familiarity with the parties and the chronology of this case. So the most straightforward reason why it wasn't an abuse of discretion to attribute this continuance to defendant and thereby tolling the speedy trial clock is because of the statutory rule that a defendant agrees to any delay if he doesn't affirmatively object otherwise. Or under 103.5a, a continuance shall be considered to be agreed to unless defendant affirmatively objects. So in effect, what that means is when the prospect of a continuance comes up, defendant cannot passively sit by and let it happen. If he opposes the continuance, he needs to speak up and say something. And if he doesn't oppose it, then that continuance is attributable to him. And does that have to be contemporaneous? I think that might be one of the issues here. Whether the objection needs to be... contemporaneous at the time of the February 24th, or it was actually I think on the 20th, when there is the discussion about moving the trial to July 11th. At some point, it appears that defense counsel says that date is fine, but then later files a motion objecting to it, but it isn't done that day. Is that required that it's contemporaneous? Because I think that goes to the deficient performance. Your Honor, if I understand the question correctly, no, it doesn't need to be strictly contemporaneous in this respect. In that a defendant is bound by his attorney's actions. And to avoid being bound by his attorney's actions, such as an agreement or an acquiescence to a continuance, that defendant needs to A, essentially explicitly disagree with his attorney's actions and request a speeding trial, and B, seek to discharge his attorney at that point. This defendant, while pro se, did file such a motion in, I believe, March 2022. But then in the next court appearance in April 2022, he has effectively abandoned that motion. He made no mention of this pro se motion or any intent to discharge his attorney. And the fact that trial counsel belatedly said, oh, this February continuance is attributable to the defendant, that was just too little too late at that point. But really more fundamentally, the fact that defendant did not affirmatively object to that continuance just means by statute this continuance was attributable to him. Well, so the fact that he filed the motion and objecting, you say, is not an affirmative objection, something that should have been ruled on or discussed by the trial court? Not in this case, Your Honor, because the defendant abandoned that motion. Did he specifically? When you say abandoned, what did he do? What were his actions? Certainly. So during the April 2022 court hearing, what the court called a scheduling conference, that hearing was primarily geared toward the Buckleswab motion that the state had. The trial court asked, is there anything else that we need to do during this court hearing? And defendants didn't personally say, Your Honor, I'd like to discharge my attorney and request a speeding trial. Defense counsel himself didn't raise any issues related to that as well. So it's really belatedly after the fact that trial counsel then changed his tune and said, actually, this February 2022 continuance, we're not agreeing to that. But it was too little too late at that point. But you say he changed his tune, but defense counsel says we're not agreeing to that. And what action then was taken? I mean, you said they said, hey, are there any other issues? Defense counsel says we're not agreeing to that. What happened then? So just maybe to. Are you referring to the June? Well, at some point, we're saying you said there was the. But it was in April. Yes, they come. And you said that it was abandoned because at that point, that's when you said he. The trial judge says, is there anything else? And the defendant doesn't say anything. But is it at that time or is it not until June that defense counsel says we're not agreeing to that? I see your honor. So I believe it was June was the first time that defendant said in writing trial counsel said in writing that we didn't agree to this February 22 continuance. He then said in his motion to dismiss and then his his post trial motion that they hadn't agreed to this February 22 continuance. But again, the trial court considered and rejected defendants arguments on why defense, why trial counsel had in fact agreed to that continuance. And that certainly wasn't an abuse of discretion. In fact, the court was well within its discretion to so find. So during that February 22 continuance, the court frankly highlighted challenges faced by both the prosecution and the defense at that point. And found during that that court hearing that neither side was ready for trial at that point. And after finding that neither side was ready for trial in February 22, February 2022, the court did two things. One is to propose a June or July trial date at that point. And the other, and this is critical, is to propose an April 2022 scheduling conference so that the parties could meet could meet with their respective witnesses as well as to assess their readiness for trial at that point. And trial counsel's only response to that proposal, again, that was based on a find that neither side was ready for trial. Counsel's only response was, well, defendant wants to stay in the county jail at this point. So the trial court was well within its discretion to interpret that response, to signal agreement to that proposal, to delay trial, and to hold this scheduling conference. And again, the court was well within its discretion to so find. The Chief Justice asked a few questions just about trial counsel's readiness for trial at that point. In April 2022, the trial court was, quite frankly, frustrated with trial counsel at that point because trial counsel said, well, I need to have access to my client while he's in the county jail. The trial court said that you need to drive down to Pinckneyville and meet with him. In August or September 2022, the trial court asked the trial counsel, well, have you ever been down to Pinckneyville to go and meet with defendant? And trial counsel said, no, not in this case. So that reflects two things. One, defense counsel just wasn't ready for trial in February 2022, and the trial court renewed this. It was well within its discretion to so find. Can you address the two statutes problem? And then most importantly, I mean, address that, but also why it makes a difference? When you refer to the two statutes, are you referring to the interstate detainer statute? Interstate counterfeit. I see, Your Honor.  So that goes really to our deficient performance prong that trial counsel was not deficient for not filing a speedy trial demand because he didn't need to do so in this case. The 160-day clock started automatically under 103-5E. And as I referenced earlier, that was the basis for the trial court's decision to deny the motion of dismiss. So 103-5E provides a specific rule for defendants in custody in the same county, at least two on the way to charges. And under the plain language, excuse me, of that rule, where the first case results in a conviction, which is what happened here, the second trial, quote, shall begin within 160 days from the judgment or the sentencing in that case. So the trigger under 103-5E is the sentencing in the first case. It's not any speed trial demand that defendant files in prison under that judgment. In fact, if this court looks at 103-5E, it's quite specific about all the factual scenarios that might happen in this first case. And like I said, where there's a conviction, the judgment then triggers the 160-day clock. I think tellingly, my friend in his reply brief really does not respond to our arguments on why 103-5E governs here. Instead, he doubles down on the application of the Interstate Detainers Statute. But as I explained further in our brief, this is not an interstate detainer's case by way of the plain language of 103-5E. To the extent that the Interstate Detainers Statute provides a general rule for incarcerated litigants, 103-5E provides the more specific rule where the defendant is facing two charges in the same county. And it's well established that a specific statute will control over a general one. Do you understand the argument that counsel makes that it was ineffective for trial counsel not to pursue a demand under the interstate compact? Do you understand the argument of how the defendant was prejudiced by that? Your Honor, that I think goes to what I was saying earlier, that he wasn't prejudiced in this case because it wouldn't have made a difference. That even if trial counsel was supposed to file a speedy trial demand, we know on the facts and the record in this case that any such demand wouldn't have made a difference because the trial court found that he was trying well within 160 days. So whether this court concludes that he didn't need to file a speedy trial demand or a speedy trial demand wouldn't have made a difference, either way is a straightforward way of resolving this straight-line claim and just proves that his speedy trial claim is meritless. If this court has no further... I have another question. Sure. The appellate court here found that counsel's performance was sufficient because pretty clearly counsel didn't understand what statute applies. He thought it was 120 days. Counsel didn't understand what was going on. The appellate court's approach to this was to say, well, had he made a clear demand, we don't know what would have happened. Perhaps the state and the trial court, understanding now that none of these contingencies were at all in the statute, they would have moved forward and moved this case up on the docket to trial. Your opponent said that's just speculation. How do you respond to that? Well, Your Honor, yes. That is another reason why a defendant can't show prejudice because his prejudice theory rests on undue speculation about what would have happened had counsel filed a speedy trial demand. So essentially his claim is counsel should have filed a speedy trial demand on or before October 1, 2021, which is when the speedy trial counts started to pick up again. So essentially his theory rests on a counterfactual that his counsel would have done something differently or done a do-over and that the prosecutor of the trial court wouldn't have done anything differently. And that counterfactual assumption is just unwarranted on the facts of this case for a few reasons. For the prosecutor's part, had defense counsel brought speedy trial issues to the fore earlier in the case, the prosecutor could have responded by formally seeking under Section 1035C of the speedy trial statute an additional 60 days for each unavailable witness, such as the victim in this case, Robert Hunter, or the detectives in this case. The state could have sought an additional 120 days for buckle swap testing under the same provision. And the trial court, for its part, made clear several times that it wouldn't allow the speedy trial clock to run out unabated. As early as, I believe, November 2021, the trial court acknowledged that the speedy trial counts were picking up again because of the expiration of the administrative order. And in June 2022, the trial court raised the possibility of what the trial court called bumping other trials so that defendant would be timely tried in this case. So it's pretty clear that, again, had trial counsel filed a speedy trial amendment, again, we don't believe he needed to do so in this case, but had he done so, it wouldn't have made a difference because the prosecutor and the trial court would have responded. But again, this court doesn't need to engage in any speculation because we know, based on the trial court's decision, that defendant was tried well within 160 days. In my time remaining, unless this court has further questions on the speedy trial issues, I'd like to turn to the sentencing claim. And the most straightforward way to resolve that claim is that even if defendant could show a clear and obvious error, he can't show second-pronged plain error. And this court in Peeble v. Fort in, I believe, 2018, incorporated the trial-based plain error framework into the sentencing context. As this court has stressed most recently in Jackson and Logan, the second-pronged plain error doctrine covers a very limited class of errors that are structural errors, which are constitutional errors that are not amenable to harmless error analysis. A defendant's sentencing claim fails at the gate because we know that this is the sort of error that's amenable to harmless error analysis. In fact, the case that he relies, Peeble v. Eddington, found that the misunderstanding of the sentencing range in that case was harmless. So we know by definition that it's amenable to harmless error analysis. We also know from the Apprendi line of cases in this court that this court has also found that Apprendi errors or a special interrogatory was not submitted to the jury. We know that that is also amenable to harmless error analysis and hence not structural. In this case, a properly instructed jury surely would have found the 20-year enhancement had it been sought. And finally, on the third issue, all agree that this case should not be remanded for sentencing on the unlawful possession charge. So for those reasons, we'd ask this court to affirm the appellate court's judgment but modify it to eliminate the remand order. Thank you. Thank you very much, Counselor. Counsel for Appellant, you're fired. Thank you, Your Honors. I'd like to respond to a few points. The first is that regarding the February 24th hearing, Mr. Yankway was not bound by his counsel's actions. If this court believes that defense counsel did agree to the continuance, it was by agreement. As opposing counsel himself pointed out, Yankway's immediate response was to file a pro se pleading to amend his speedy trial rights. I don't think it can be said that their defendant abandoned this claim just because it wasn't brought up at the next hearing. A lot of discussion in this case has revolved around trial counsel talking with Yankway. I don't think it's appropriate to say, on one hand, defense counsel's not talking to Yankway, but on this April date, I think the reasonable assumption here is that they discussed the issue and defense counsel did file an objection to the order saying the continuance was by agreement. Regarding the claim of deficient performance, again, we submit that the Interstate Detainer Statute applies by its plain language. However, consistently here and in the appellate court, we've also said that defense counsel performed efficiently because he did not affirmatively demand a trial. We should have been aware the delay was occurring. If opposing counsel wants to hang his hat on the Interstate Detainer Statute and say that, well, the 160-day clock just began to run automatically, this court can still find deficient performance, and we raise that argument, again, both in the appellate court and here. The state invites, you know, the state challenges my reading on the Interstate Detainer Statute, and in my mind, asks this court to make it easier for defendants to be able to assert their speedy trial rights. So I would welcome that invitation if that's what this court wants to decide. I also want to respond to the claim that the state would have just done things differently if defense counsel had correctly demanded a trial. If the state is saying that the 160-day clock began to run automatically and the speedy trial right began to run automatically, well, then the state would have also needed to do the same things opposing counsel is saying, for example, on the June 30th hearing. When the two law enforcement officers couldn't attend the trial scheduled for July 11th, the state still filed a motion that did not toll the speedy trial clock, and the speedy trial clock continued. Opposing counsel is saying, well, if the demand was right, then they would have just filed the right motion. But opposing counsel is also saying the 160-day clock ran automatically. The point being, it's not enough for the state to just say they would have changed things if the speedy trial demand had been compliant. If we're looking at the actuality of what happened, the state made specific decisions, including not filing motions that told the speedy trial clock, asking for continuances, and letting a potential speedy violation occur. The 120-day clock that the state thought it had on June 30th, the state allowed a potential violation to occur. I think this is strong evidence that there was prejudice. And again, it's not sufficient for the state to simply say, even if there is a speedy trial violation, and even if there was deficient performance, that means that we just would have called the trial center. That can't be the case in every single claim of ineffective assistance. If it were, there would no longer be a claim of ineffective assistance based on speedy trial violations. I think this court has said and other courts have found that those are cognizable claims. It should do so again here for the reasons argued in this case. And today and in the briefs, this court should find that Mr. Yankaway received ineffective assistance of counsel and reverses convictions accordingly. I would like to address the second argument as well as the state's points about that. The first is that this is not an apprendi issue. The state simply gave the jury a 15-year sentencing add-on. Pre-trial, the state said it was not going to seek a 20-year add-on, and the state should be held to that. It's not sufficient to say, well, the jury could have found that Mr. Yankaway validly the 20-year add-on applied and the jury would have found that. The state specifically sought the 15-year add-on, so this is not apprendi. And the court's error of misapprehending the sentencing range, which both parties agreed that the court did misapprehend the sentencing range. That's not really in dispute here. That was a clear and obvious error. The issue over second prong plane error, the state says that, well, it's not, you know, this isn't a structural error. Although for issue three, the state also says one act, one crime applies, one act, one crime is not structural either. Second prong plane error does not always have to be a structural error. Here, I don't think that it would be, excuse me, I'll rephrase that. Here, I think for purposes of judicial integrity, the state, if it's giving a 15-year add-on, should be held to that. And that is where the second prong plane error lies. So for those reasons, we do think this court should, if this court does not agree with issue one, reverse, excuse me, remand Mr. Yankaway for resentencing on count one. If Your Honor has any more questions, I'd be happy to answer them now. Thank you very much. This case, agenda number 11, number 130207, People of the State of Illinois v. Ceterius, Yankaway, will be taken under advisement. Thank you.